UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS STEVEN CARNAHAN,

        Plaintiff,

v.

STEVEN ADAMSON et al.,

        Defendants.

_____/

Case No. 1:24-cv-809

Honorable Hala Y. Jarbou

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss, for failure to state a claim upon which relief can be granted, Plaintiff's First Amendment free exercise claims for damages against Defendants in their respective official capacities and Plaintiff's Religious Land Use and Institutionalized Persons Act (RLUIPA) claims for injunctive relief against Defendants in their respective individual capacities. The Court will also dismiss, for failure to state a claim, Plaintiff's

RLUIPA claims for injunctive relief against Defendants Cheney and Davids. Plaintiff's First Amendment claims for damages against Defendants in their respective individual capacities and his RLUIPA claim for injunctive relief against Defendant Adamson in his official capacity remain in the case.

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. See MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=925258 (last visited Mar. 11, 2025). The events about which Plaintiff complains, however, occurred while he was housed at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Special Activities Coordinator Steven Adamson, ICF Chaplain Casey Cheney, and ICF Warden John Davids. (*See* Compl., ECF No. 1, PageID.1–2.) Defendants are sued in their respective individual and official capacities. (*Id*.)

Plaintiff alleges that he "is a practitioner of Satanism . . . according to [his] sincerely held religious beliefs there exist[] certain religious practices" that he would like to follow. (*Id*., PageID.3.) On April 5, 2024, Plaintiff "sent a kite to Defendant Chaplain Cheney requesting to change his official listed religious preference to Satanism" pursuant to the relevant policy directive. (*Id*.) Plaintiff also asked Cheney to have Satanic services started at ICF. (*Id*.) Plaintiff received no response. (*Id*.)

The next day, Plaintiff sent a second kite to Cheney again requesting a change in his listed religious preference to Satanism. (*Id*.) Plaintiff received no response. (*Id*.) On April 13, 2024, Plaintiff sent a third kite to Cheney asking why he was "unable to get a satanic bible or any church of Satan study materials." (*Id*.) Cheney responded by stating that "the Church of Satan is not approved and is a threat to safety of the facility," and that "the Satanic bible violates mail policy

2

and is not approved." (*Id.*) Plaintiff alleges that "staff routinely destroys [his] alters of worship in his cell," as well as that Plaintiff "is being denied a time for worship [and] study materials" to practice Satanism. (*Id.*, PageID.3–4.) Finally, Plaintiff asserts he asked to attend "'WICCA' services due to its similarities to Satanism, but they refuse[d him permission] to attend that." (*Id.*, PageID.4.)

Plaintiff submitted two exhibits along with his complaint.[1] The first exhibit contains Plaintiff's completed grievance forms showing that he sought to grieve the denial of his request to practice Satanism. (*See* ECF No. 1–1.) On his grievance form, Plaintiff stated that he was seeking to "maintain a service, be provided with necessary materials, and order religious text" for Satanism and that these activities were disallowed "while in seg[regation] & incarcerated." (*Id.*, PageID.14.) The second exhibit is labeled a "Declaration of Sincerely Held Beliefs." (*See* ECF No. 1–2.) Therein, Plaintiff states that his adherence to Satanism has, among other things, "helped [him] become morally just," "allowed [him] to spiritually grow and mature gaining confidence, passion, strength and happiness [he] was missing" and "overcome a heroin addiction." (*Id.*, PageID.19.) Plaintiff concludes that allowing him "to acquire important books and a service would be beneficial[.]" (*Id.*)

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16–1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20–4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)).

Based on those factual allegations, Plaintiff asserts a claim under 42 U.S.C. § 1983 for alleged violations of his First Amendment right to freely exercise his religion, and a claim under RLUIPA. Plaintiff seeks an injunction "to immediately approve Plaintiff for Church of Satan services and materials," plus $250,000 in compensatory and punitive damages against "both defendants."[2] (Compl., ECF No. 1, PageID.5.) Plaintiff seeks only injunctive relief for the alleged violations of RLUIPA and only damages for the alleged violation of his First Amendment free exercise rights. (*Id.*)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

---

[2] Plaintiff's identification of the Defendants is not consistent throughout the complaint. In the caption, for example, he identifies Defendants Adamson and Defendant Cheney, and he indicates that they are "[b]oth sued in their Individual and Official Capacities." (Compl., ECF No. 1, PageID.1.) However, when listing the parties in this suit, Plaintiff does not mention Defendant Adamson; he identifies only Defendant Davids and Defendant Cheney. (*Id.*, PageID.2.) And, in the factual allegations, Plaintiff mentions only Defendant Cheney. (*Id.*, PageID.3–5.) In Plaintiff's request for relief, Plaintiff seeks damages against "both defendants." (*Id.*, PageID.5.) Liberally construing Plaintiff's complaint, the Court will proceed as if Plaintiff intended to sue all three of the Defendants.

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Discussion

Plaintiff contends that the Defendants violated his Free Exercise Clause and RLUIPA rights by refusing to recognize Plaintiff's religion of Satanism, refusing to permit group service for Satanism, and not permitting Plaintiff to receive the Satanic Bible or Church of Satan study materials. There may be many different religions that might be described as satanic. Plaintiff, however, makes clear that he is following Satanism as developed and taught by Anton Levay and his Church of Satan. (Decl., ECF No. 1-2, PageID.19.)

#### A. Section 1983 Free Exercise of Religion

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely

exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a First Amendment free exercise claim, a plaintiff must state facts that (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95–2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

At this stage of the proceedings, the Court accepts as true Plaintiff's allegation that he sincerely holds religious beliefs, and there is little doubt that studying religious texts and group worship are common religious practices. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[T]he Government substantially burdens an exercise of religion when it 'place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere

6

faith-based conduct.'" *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 589 (6th cir. 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014)). It "is a  is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.* Plaintiff's allegations regarding the burden Defendants have imposed on Plaintiff's religious practices permit an inference that the burden is substantial in that it effectively bars his sincere faith-based conduct.

Prison officials may impinge on the free exercise right, even impose a substantial burden, where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

>   1.   does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
>   2.   are there alternative means of exercising the right that remain open to prison inmates;
>
>   3.   the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and,
>
>   4.   whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91). It is Defendants' burden to offer a legitimate penological interest to justify the infringement; it is not Plaintiff's burden to rule out all possible legitimate penological interests. *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir.

2006) (explaining that "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns were irrational" (internal quotation marks, citations, and footnote omitted)).[3] Therefore, at this stage of the proceedings, Plaintiff has alleged the necessary elements of a First Amendment free exercise claim.

### B.     RLUIPA

RLUIPA, 42 U.S.C. § 2000cc–1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight*, 763 F.3d at 559–60. RLUIPA also creates a burden-shifting framework for assessing prisoner claims. A prisoner bears the initial burden to show (1) his desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019). "If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify

---

[3] The Second Circuit Court of Appeals has recently called into question *Salahuddin*'s statement regarding whether the prisoner must show a "substantial burden." *Kravitz v. Purcell*, 87 F.4th 111, 125–26 (2d Cir. 2023). The crux of the *Kravitz* analysis, however, is the rejection of any inquiry "into the centrality of a litigant's religious beliefs" in determining the extent of the burden, choosing instead to focus on "a showing of the plaintiff's sincerity to establish a *prima facie* free exercise violation." *Id.* at 123–24. There is nothing in the *Kravitz* opinion to suggest that the alleged infringer is relieved of the obligation to come forward with the justifying legitimate penological objective.

the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test,' with a slight twist." *Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) (quoting *Cavin*, 927 F.3d at 458). Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

RLUIPA does not define the phrase "substantial burden." However, the phrase "has the same meaning under RLUIPA as provided by the Supreme Court in its 'free exercise' decisions." *See Miles v. Mich. Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *3 (6th Cir. Aug. 20, 2020). Accordingly, a burden is substantial "when it place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . or effectively bar[s] his sincere faith-based conduct." *Id*. (internal quotation marks omitted) (quoting *New Doe Child #1*, 891 F.3d at 589 (quoting *Haight*, 763 F.3d at 565)). Therefore, in Plaintiff's case, the same factual allegations that suffice to state a First Amendment free exercise claim suffice to state an RLUIPA claim.

### C.      Capacity

The complaint broadly states that Plaintiff is asserting his claims under both the Free Exercise Clause of the First Amendment and RLUIPA, seeking monetary damages for violations of the First Amendment and injunctive relief for violations of RLUIPA, and naming Defendants Adamson, Cheney, and Davids in their respective official and individual capacities. Even though Plaintiff has stated claims for both violations, they are not necessarily claims upon which relief can be granted under every possible combination of claim and capacity.

#### 1.      First Amendment Claims for Damages

A plaintiff may sue state officials in their individual capacities for damages under § 1983. *See, e.g.*, *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 457 (6th Cir. 1998). Thus,

9

Plaintiff's First Amendment free exercise claims against the Defendants for damages will remain in this suit.

Plaintiff, however, also sues Adamson, Cheney, and Davids under § 1983 in their official capacities for monetary relief. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, Plaintiff could not pursue a damages claim against the State of Michigan or the MDOC under § 1983, and he cannot pursue such a claim against the Defendants in their respective official capacities. Accordingly, Plaintiff's official capacity claims against Defendants for damages under § 1983 are properly dismissed because relief cannot be granted on such a claim.

### 2.    RLUIPA Claims for Injunctive Relief

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd, Sossamon*

*v. Texas*, 563 U.S. 277 (2011);[4] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[5] Therefore, Plaintiff's RLUIPA claims for injunctive relief against Defendants in their respective individual capacities are properly dismissed because there can be no RLUIPA claim against a state official in his or her individual capacity.

As noted above, however, Plaintiff brings claims against all Defendants in their respective official capacities as well. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)); s*ee also Matthew*, 35 F.3d at 1049. "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165-66. Thus, a suit against an individual in his or her official capacity is

---

[4] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009).

[5] In *Haight*, 763 F.3d at 554, the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id.* at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

11

equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews*, 35 F.3d at 1049.

As explained above, regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst*, 465 U.S. at 98–101; *Pugh*, 438 U.S. at 782; *O'Hara*, 24 F.3d at 826. In *Sossamon*, the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. 563 U.S. 277; *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, in itself, sufficiently prove that

the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). Here, the violation is ongoing in that Plaintiff, presumably, continues to be prevented from freely exercising his religious beliefs under the MDOC's policy directive regarding the religious beliefs and practices of prisoners. *See* MDOC Policy Directive 05.03.150 (eff. Oct. 28, 2024).

A plaintiff can sue state officers to enjoin an unconstitutional state policy. When challenging a state policy, the officer sued must "have some connection" with the policy's enforcement or execution. *Ex parte Young*, 209 U.S. at 157. So long as the named defendants are "actively involved" with the challenged conduct, they can be sued for injunctive relief without implicating the Eleventh Amendment. *Id.*; *accord Doe v. DeWine*, 910 F.3d 842, 848–49 (6th Cir. 2018).

Under Policy Directive 05.03.150,[6] each Defendant played some role in enforcement of the policy: MDOC Special Activities Coordinator Steven Adamson is a member of the Chaplaincy Advisory Council, maintains the Religious Groups Handbook, conducts all necessary inquiries regarding the recognition of new religious groups, reviews and makes final determinations regarding requests for religious accommodation, and approves requests to eat from a religious menu; ICF Chaplain Casey Cheney receives and refers requests for religious group recognition, schedules attendance at services and activities, receives and process prisoner religious preference declarations, handles requests for holy day observation, approves temporary prisoner leadership

---

[6] Plaintiff cites and relies upon the MDOC Policy Directive 05.03.150 in his allegations. (Compl., ECF No. 1, PageID.3, ¶ 9.) Although the policy directive is not attached to the complaint, the Court may consider it even at this early stage of the proceedings because it is "referred to in the complaint and [is] central to the plaintiff's claim or [because it is a] matter[] of public record." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (internal quotation marks and citations omitted).

13

of group religious services, reviews and processes religious accommodation requests, and coordinates the facilities religious programming at ICF; and ICF Warden John Davids establishes the hours available for religious services and activities, suspends, cancels, or reschedules services or activities or restricts the size of the group attending for custody and security reasons, receives and processes outside group requests to make donations, ensures the facility can accommodate baptism requests, and permits qualified religious volunteers to conduct services and activities at ICF. *See generally* MDOC Policy Directive 05.03.150.

Now that Plaintiff has transferred to SLF, however, the actions of Cheney and Davids in enforcing the policy no longer impact Plaintiff. They are no longer actively involved in enforcing the policy against Plaintiff; thus, prospective relief is no longer available. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained). The same is not true with respect to Defendant Adamson. Adamson's continuing role with the MDOC's Central Facilities Administration means that he continues to enforce the religious beliefs and practices policy with regard to Plaintiff despite the transfer to SLF. Accordingly, Plaintiff's RLUIPA claims against Defendants Cheney and Davids will be dismissed because Plaintiff can no longer obtain relief on those claims. Plaintiff's RLUIPA claims against Defendant Adamson in his official capacity will remain in the case.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's First Amendment claims for damages against Defendants in their respective official capacities and Plaintiff's RLUIPA claims for injunctive relief against Defendants in their respective individual capacities will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's RLUIPA claims for injunctive relief against

Defendant's Cheney and Davids in their respective official capacities will also be dismissed because those claims fail to state a claim upon which relief may be granted.

Plaintiff's First Amendment claims for damages against all three Defendants in their respective individual capacities and his RLUIPA claim for injunctive relief against Defendant Adamson in his official capacity remain in the case.

An order consistent with this opinion will be entered.


Dated:   March 13, 2025                              /s/ HALA Y. JARBOU
                                                                                               Hala Y. Jarbou
                                                                                               Chief United States District Judge